# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN RE: ) | Case No.: BK 11-82460 |
| ) | |
| SANITARY AND IMPROVEMENT ) | CHAPTER 9 |
| DISTRICT NO. 258 OF SARPY ) | DISCLOSURE STATEMENT |
| COUNTY, NEBRASKA ) | |

## I. INTRODUCTION

Sanitary and Improvement District No. 258 of Sarpy County, Nebraska (the "District"), pursuant to 11 U.S.C. § 901 et seq. and 11 U.S.C. § 1125, provides this Disclosure Statement to all parties in interest in this case for the purpose of providing such parties with information which the District considers adequate to enable such parties, according to their claims in interest, to make an informed judgment about the District's proposed Plan of Adjustment ("Plan") and, on the basis thereof, to exercise the voting rights provided them under the Plan and applicable provisions of Chapter 9 of the Bankruptcy Code. All capitalized terms shall have the meaning given to them in the Plan, unless context clearly requires otherwise.

The Disclosure Statement and Plan of Adjustment of the District constitute the statements and representations of the District. No warranty is intended or implied as to the accuracy or adequacy of data presented or opinions expressed, nor may a creditor or other person construe that data provided by or recommendations made by the District's counsel, Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, L.L.C., the District's accountants, Lutz & Company, P.C., and the District's fiscal agent, Kuehl Capital Corporation, as warranty of the accuracy and adequacy of the contents of the Disclosure Statement and Plan of Adjustment. No dealer, broker, salesman, or other person has been authorized by the District to give any information or make any representation other than as set out by the District in this Disclosure Statement and the Plan of Adjustment.

No representations concerning the District or the Plan, particularly as to its future business operations or the value of its property, are authorized by the District except as set forth in this Disclosure Statement. You should rely on no representations or inducements offered to secure your acceptance other than those contained in this Disclosure Statement. Any representations or inducements not contained herein should be reported to the undersigned attorney for the District,

who in turn shall report such information to the Court for such action as it may deem appropriate.

The information set out in this Disclosure Statement and Plan of Adjustment has been compiled on behalf of the District from sources believed to be reliable. Some of the information contained herein has not been subjected to a certified audit. Counsel for the District has not verified the information set forth herein, but has no actual knowledge of any inaccuracies. The records kept by the District may not have always been complete, and the accuracy of information in this Disclosure Statement is dependent upon the reliability of the District's records. For the foregoing reasons, as well as because of the complexity of the District's financial matters, the District is unable to warrant or represent that the information contained herein is without any inaccuracy, although great effort has been made to be accurate. The information is not to be construed as a representation by counsel, fiscal agent, or accountant.

The information and expressions of opinion are made subject to change and neither the delivery of said Disclosure Statement and Plan of Adjustment, nor the acceptance of the Plan by the Court, nor the exchange of securities, if any, made by creditors or holders of securities of the District, shall create any implication that there has been no change in the information or opinion set forth in said Disclosure Statement and Plan of Adjustment.

Any proposed plan for the exchange of securities and any projections made concerning the probability or possible recovery of the value of any investment made in any series or any type of security or debt instrument of the District is contingent upon a variety of circumstances and conditions and the holder of any class of security or debt of the District accepts and assumes all risk as to the ability of the District to meet its obligations under any Plan of Adjustment ultimately confirmed by the Bankruptcy Court. Further, no assurances are given nor implied that the Plan as initially proposed or such Plan as might finally be confirmed by the Bankruptcy Court represents the best plan, or that other alternatives may or may not exist which might result in a greater or lesser recovery of assets by any creditor or holder of securities of the District.

## II. USE AND PURPOSE OF DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to allow the creditors of the District to better understand the matters surrounding the bankruptcy of the District. The Disclosure Statement outlines the history of the District, its operations and its financial status.

The historical information contained in this Disclosure Statement is based upon the records

of the District. The facts set forth in this Disclosure Statement have been compiled from the most reliable sources available. While the District does not guarantee the accuracy of all information contained herein, it has used its best efforts to provide the most reliable information available in this Disclosure Statement.

The information contained within this Disclosure Statement should be carefully reviewed. It may be advisable for a creditor of the District to consult with his or her investment, tax, and/or legal advisor. An understanding of the information set forth in this Disclosure Statement will provide the necessary background for the creditors of the District to make an informed decision regarding the Plan.

### III. BACKGROUND

In order to properly understand the operations of the District, this section of the Disclosure Statement will provide general information regarding a sanitary and improvement district ("SID") and specific information regarding the District. While not all information applying to SIDs generally may apply to the District, the general information is provided as a context for the District's current operations.

**A.    General SID Overview.** A SID is a municipal corporation. In many ways, a SID is similar to a small city or village. A SID is responsible for the construction of public improvements, such as roads and utilities, within its geographic boundaries. A SID has taxing authority under Nebraska law, and the owners of real estate located within the SID pay property taxes to the SID in exchange for any benefits provided. Unlike other municipal corporations, a SID does not have police power. Services such as police and fire department protection are provided through arrangements with nearby city or county governments.

The majority of a SID's expenditures occur before it has significant tax revenue. Taxes collected by a SID are based upon the assessed value of the real estate within the SID's boundaries. In the beginning, a SID usually consists of unimproved property, and this unimproved property, without street access or utilities, is assessed at a low value per acre or per square foot. The SID expends significant sums of money in installing roads, sewer, power, and other infrastructure. Once these improvements are installed, the values of the lots within the SID's boundaries are increased in value, and are marketable to individual owners.

The owners of lots within the SID will then construct buildings, such as homes, on these

individual lots. These buildings will increase the tax base of the SID, in turn increasing the SID's tax income. With the initial improvements installed by the SID in place, the SID's cost of operation may decrease at the same time as the tax income increases.

A SID levies annual real estate taxes to pay its annual operating expenses and to help pay for the cost of public improvements. The portion of the annual real estate taxes used to pay a SID's annual operating expenses are paid to its general fund and the portion of the annual real estate taxes used to help pay the cost of the SID's public improvements are paid to its construction/bond fund. A SID also levies special assessments against the real property benefitted for the cost of the installation of the public improvements in an amount and to the extent of special benefit to the property. The collected special assessments, taxes and other revenue together with proceeds from bond issues of the SID are also deposited in the bond fund. The cash in the bond fund is used to create a sinking fund to retire the bonds and redeem the SID's outstanding warrants.

**B.    History of the District.**

i.    Formation. The District was legally formed as a SID under Nebraska law on December 13, 2004, to develop a residential subdivision in Sarpy County to be known as "Covington." Covington subdivision as platted contains one hundred eighty-seven (187) total lots. The subdivision contains four (4) outlots and one hundred eighty-three (183) single-family lots. A map of the entire area platted is attached hereto as Exhibit "A" and is incorporated herein by this reference. McCune Development, LLC, a Nebraska limited liability company, is the developer of the Development.

ii.   Development Status. Of the one hundred eighty-seven (187) lots, sixty-nine (69) lots have homes built or under construction as of May 1, 2011.

iii.  Present Financial Status. The District has outstanding construction fund warrants of Six Million Four Hundred Seventeen Thousand Nine Hundred Sixty-two Dollars and 60/100 ($6,417,962.60) as of May 31, 2011. Unpaid accrued interest on those warrants as of May 31, 2011 was Four Hundred Eleven Thousand Eight Hundred Twenty-one Dollars and 38/100 ($411,821.38). On July 1, 2011, the unpaid accrued interest on those warrants will be Four Hundred Forty-nine Thousand Two Hundred Fifty-seven and 42/100 ($449,257.42). On or about July 1, 2011, the District will issue additional construction fund warrants to pay the foregoing interest. Additionally, outstanding general fund warrants of Three Hundred Fifty-five Thousand Nine Hundred Seventeen Dollars and 26/100 ($355,917.26) and interest

accrued thereon in the amount of Forty-four Thousand Six Hundred Sixty-three Dollars and 18/100 ($44,663.18) remained outstanding as of May 31, 2011.

As of May 31, 2011, the District held cash in the amount of Sixty-six Thousand Eight Dollars and 19/100 ($66,008.19), and investments in the amount of One Million Eighty-four Thousand Five Hundred Forty-eight Dollars and 32/100 ($1,084,548.32). Finally, there were special assessments due as of April 30, 2011 in the amount of One Million Three Hundred Ninety-six Thousand Seven Hundred Fifty-six Dollars and 60/100 ($1,396,756.60).

Taxes levied for the 2010/2011 fiscal year totaled One Hundred Nineteen Thousand Eight Hundred Fifteen Dollars and 82/100 ($119,815.82). Based on the 2010 tax valuations, the value of all property within the District (the "Tax Base") is Thirteen Million Three Hundred Twelve Thousand Eight Hundred Sixty-nine Dollars and No/100 ($13,312,869.00) and the total levy per hundred dollars evaluation by the District is ninety cents ($.90) with forty cents ($.40) being allocated to the general fund and fifty cents ($.50) being allocated to the construction fund. Attached hereto as Exhibit "B" and made a part hereof by this reference are the basic financial statements with supplementary information and accompanying independent auditors reports for the year ending June 30, 2010 for the District.

iv. <u>Full Development Valuation</u>. The full Tax Base of the District upon completion of construction on all lots is an estimated Fifty-One Million One Hundred Thousand Dollars and 00/100 ($51,100,000.00).

v. <u>Problems in Paying Warrants in Full</u>. The problem in Covington is the size of its indebtedness, lack of cash and cash equivalents and insufficient Tax Base. As of May 31, 2011, net deficit or general obligation was Four Million Two Hundred Eighty-two Thousand Four Hundred Seventy Dollars and 87/100 ($4,282,470.87). This net deficit assumes that all special assessments and interest are payable immediately. However, special assessments typically are paid when the lot is purchased from the developer. The timing and receipt of these special assessments is uncertain and variable. At its current construction fund debt of $6,417.962.60, if nothing is changed, the outstanding debt at the current warrant interest rate of 7% would increase to $7,862,281.38 in three years. At the current level, interest on the District's debt is accruing at $449,257.45 per year or $1,247.94 per day. The interest accruing at this rate is unsustainable. The taxable valuation of SID 258 in 2010 tax year was $13,312,869.00. For its next fiscal year, the District can levy a maximum of $0.40/$100

of assessed valuation in its general fund and $0.50/$100 of assessed valuation in its construction/bond fund. At the 2010 valuation, a $0.50 bond fund levy would raise $65,233.06, which less the County Treasurer's 2% fee would be $63,928.40. Without eliminating the interest accruing on its debt, the District will be unable to retire its debt. The development did not build out as quickly as anticipated and, consequently, the Tax Base did not increase as anticipated. Construction of homes in the development will increase the Tax Base, thereby increasing tax receipts to pay the outstanding indebtedness. However, a tax rate that is excessively high and above other districts in the area will keep away buyers and impair the ability of the District to reach full valuation within a reasonable period of time. In addition, Nebraska Revised Statute § 31-755 clearly states that a sanitary and improvement district need not levy an ad valorem real estate tax to fund the retirement of warrants which is unreasonably high when compared with other comparable property within the county.

vi.   Bankruptcy. In analyzing its ability to pay its debts, the District has considered a number of options. Although the District is not in a position to directly control development, it has considered both raising its tax levy to increase current income and decreasing its tax levy to promote development. Ultimately, the District has determined, after careful consideration, that neither of these solutions alone would be sufficient to raise the funds necessary to pay the existing debts as they come due. The District, through its Board of Directors, came to the difficult conclusion that a restructuring of the District's debt through a Chapter 9 bankruptcy provided the best opportunity to pay all creditors a maximum return. Therefore, the Board of Directors of the District authorized the preparation of the Plan of Adjustment, this Disclosure Statement and a Ballot to be disseminated to construction fund warrant holders of the District.

## IV. CLASSES OF CREDITORS

The District has three (3) distinct classes of creditors at this time. Due to provisions of the Nebraska statutes, the Code and practical considerations, the debts of these creditors will be paid as follows:

**A.     Administrative Expenses.** Administrative expenses are expenses incurred by the District during the course of the bankruptcy. As no party would perform work for a bankruptcy

debtor without a guaranty of payment, the Code provides that administrative expenses will be paid in full from the assets of the Debtor. In accordance with the Plan and the Code, all holders of administrative claims will be paid in full from available funds held by the District. These expenses can be significant in a bankruptcy which is not approved by creditors prior to filing.

**B.** **General Fund Warrant Holders.** General Fund Warrants issued prior to the filing of bankruptcy were issued in payment for services provided directly to the District. Such warrants are issued to contractors providing street repairs, utility companies, and other contractors performing work directly for the District. Retaining these service providers to perform future services to the District is important for the District's continued viability. In order to allow the continued operation of the District at standard levels of service, General Fund Warrant Holders shall be paid in full from available funds held by the District.

**C.** **Construction Fund Warrants.** Construction Fund Warrants make up the remainder of the District's debt. For the reasons outlined above, other debts of the District must be paid in full. In a traditional Chapter 9 bankruptcy, Construction Fund Warrants would be paid some percentage of their value over a short period of time and then terminated regardless of the amount repaid. In this case, the District seeks the potential to repay Construction Fund Warrant Holders much greater returns based upon future income of the District.

In exchange for the cancellation of outstanding Construction Fund Warrants, Pre-petition Construction Fund Warrant Holders will be provided with a Class A Bond in accordance with the terms of the Plan. When the Class A Bonds are paid, in full, a Class B Certificate will be issued to the holder of the Class A Bonds and Class B Certificates, which may continue to receive payments for approximately ten (10) years, will be paid on a pro rata basis as a percentage of the total outstanding obligations.

## V. DISTRICT OPERATIONS UNDER THE PLAN

The general goal of the Plan is three-fold. First, the Plan allows the District to continue to operate. Second, the Plan maintains the quality of life for the residents of the District which, in turn, will foster new construction, thus creating additional income for the District. Finally, the operation of the District, together with the increased income of the District, will be used in every way possible to make every effort to repay each and every creditor of the District.

A.    **District Operations.** As provided for in the Plan, the General Fund budget of the

District is Fifty-two Thousand One Hundred Eighty-six Dollars ($52,186.00) for the 2010/2011 fiscal year which equates to a General Fund Levy of Forty Cents ($0.40) per One Hundred Dollars ($100.00) of valuation. The Plan proposes to reduce the General Fund Levy to Thirty Cents ($0.30) per One Hundred Dollars ($100.00) of valuation, which will generate Thirty-nine Thousand Nine Hundred Thirty-eight Dollars ($38,938.00) for the General Fund if there is no increase in valuation prior to the 2011/2012 fiscal year. The District will be entitled to increase the foregoing amount two and one half percent (2.5%) per year after the 2011/2012 fiscal year. This budget allows for payment of operating expenses as they arise, as well as allowing the District to set aside any excess within this set budget for payment of future expenses. The District may not exceed this budget without an order of the Court.

   B. **Payment of Existing Construction Fund Warrant Holders**. The remaining funds of the District not spent or allocated above, shall be used for the repayment of the Pre-petition Construction Fund Warrant Holders. The Pre-petition Construction Fund Warrant Holders will have their Warrants exchanged for Class A Bonds issued in accordance with the terms of the Plan. Class A Bonds will be issued in the amount of principal and accrued interest owed by the District to the Pre-petition Construction Fund Warrant Holders as of Petition Date. The Class A Bonds will not accrue interest. A Class B Certificate of Indebtedness will be issued for each Class A Bond issued when, and only when, the Class A Bonds are paid, in full and will represent an accrual of simple interest on the outstanding principal of the outstanding Class A Bond at the rate of seven percent (7%) annually on the outstanding principal balance of the corresponding Class A Bond. The Class B Certificates will be paid in accordance with the terms of the Plan.

   C. **Projected Repayment of Certificate Holders**. As outlined above, the Plan takes a fairly simple approach to the repayment of the Bond and Certificate holders. All other expenses of the District are either fixed or minimized. The District is not given the discretion to spend any of its available income other than as determined by the Plan during the term when Bonds and Certificates are outstanding. As homes are constructed in the District, the valuation of the District will increase. The increase in property values, and the related increase in the District's income, inures to the benefit of the Bonds and Certificate holders.

Future construction and valuation provide income to the District, and payment to Certificate holders, in two ways. First, the taxes directly paid to the District increase. Second, increased valuation provides the District the opportunity to issue Post-Petition Bonds. Class A Bonds and

Class B Certificates will be junior to any Post-Petition Bonds. The sale of such Post-Petition Bonds would result in the ability of the District to make payments on the Class A Bonds and the Class B Certificates.

The two variables affecting the income of the District, the number of homes built and the average value of such homes, may vary for a number of reasons. The cost of construction, the local real estate market and the regional and national economy, among other factors, will all affect the District on a year-to-year basis. A housing boom combined with general economic growth will increase the income of the District to allow higher payments to the holders of the Bonds and Certificates. In the event of a prolonged downturn in the housing market, the actual income of the District will not be as high. However, notwithstanding the market forces, the approximately ten (10) year term of the Plan allows for a few good years to make up for a few bad years.

D. **Additional Expenditures**. This Disclosure Statement does not attempt to set forth each and every aspect of the District's operations under the Plan. The Plan should be reviewed together with this Disclosure Statement. Uncommon expenses of the District are subject to change based upon the Plan as submitted and approved by the creditors of the District and the Bankruptcy Court.

E. **Redemption of Construction Fund Warrants**. Once the Plan is approved, Pre-petition Construction Fund Warrant Holders must tender their Pre-Petition Construction Fund Warrants to the Disbursing Agent to exchange their Warrants for Class A Bonds within 30 days after the Effective Date of the Plan. The Pre-petition Construction Fund Warrants will no longer be of any value if not timely tendered to the Disbursing Agent. As the finances of the District allow, Class A Bond and Class B Certificate holders will receive payment in accordance with the terms of the Plan until paid in full or until December 31, 2021. The Class A Bonds and Class B Certificates will be freely transferrable so that any holder who wishes to obtain the immediate discounted cash value of the Class A Bonds and Class B Certificates will be able to sell their Class A Bonds and Class B Certificates. However, the Class A Bonds and the corresponding Class B Certificate may not be separated or separately owned. Based upon current market activity, the District anticipates, but does not guarantee, that a secondary market will exist for the sale of these Class A Bonds and Class B Certificates.

## VI. CONFIRMATION OF THE PLAN

Pre-petition Construction Fund Warrant Holders are the only creditors required to exchange their Warrants for Class A Bonds under the terms of the Plan. The Pre-petition Construction Fund Warrant Holders are the only class of creditors impaired under the Plan and thus required to approve the Plan. Pre-petition Construction Fund Warrant Holders will be provided a ballot to indicate their approval or disapproval of the Plan. If the Plan is approved by one-half (1/2) in number and two-thirds (2/3) in value of these Pre-petition Construction Fund Warrant Holders voting, it will likely be confirmed by the Bankruptcy Court.

Dated: September 29, 2011.

SANITARY AND IMPROVEMENT
DISTRICT NO. 258 OF SARPY COUNTY,
NEBRASKA,

By: /s/ Martin P. Pelster
    Martin P. Pelster, #19223
Of CROKER, HUCK, KASHER, DeWITT,
   ANDERSON & GONDERINGER, L.L.C.
2120 South 72nd Street, Suite 1200
Omaha, Nebraska 68124
(402) 391-6777

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A MUNICIPALITY

I, the authorized officer or an authorized agent of the municipality named as Debtor in this case, declare under penalty of perjury that I have read the foregoing Disclosure Statement and that it is true and correct to the best of information and belief.

Date: September 29, 2011.

By: */s/ Paul S. McCune*
Its: Chairman, Sanitary & Improvement District No. 258 of Sarpy County, Nebraska

00446192.DOC